This is case number 417-0177, and that is Young and Ultimate Product Corporation, and I'm not sure how to pronounce this, Jinfei? Jinfei is how I say it. I'm sorry? Jinfei is how I say it. Okay, all right. All right, so I'm in good company then. Jinfei Holding Group. And we show for the appellant, we have Ms. Goggin? Goggin. Goggin, okay, and for the appellee, Mr. Pender. Correct. You may proceed. Thank you. May it please the Court, Counsel, as you know, my name is Sherry Goggin. I'm cozy in Goggin. I represent Ultimate Product Corporation in this matter. As your honors know, all plaintiffs in this case have also joined in our appeal of the issues of the dismissal of the Jinfei defendants for this case. The only issue in this appeal, your honors, is whether the trial court erred in dismissing all claims against the Jinfei defendants and where Jinfei had the requisite minimum contacts with the State of Illinois under the Illinois Long-Arm Statute. The answer to this question, your honors, is definitely yes. The controlling Illinois Supreme Court case of Russell v. SNFA decided by the Illinois Supreme Court in 2013 and its rationale that has been interpreted as recently as about a month ago, your honors, which I believe became final in the First District case of COAL, K-O-W-A-L versus Giant Manufacturing Company, which is the 2017 First District case, not cited in our briefs because, once again, it did not become final until a few days ago, it's my understanding, but once again completely interprets the Russell case and the Russell rule in favor of our position in this matter. As this honorable court further knows, the Russell court thoroughly analyzed the entire legal history of the exercise of specific personal jurisdiction over a foreign non-resident defendant. Reading the Russell case was like going back to law school and looking through all of the precedents of International Shoe, Jay McIntyre, Asahi, all of the relevant decisions. But what the Russell court ultimately did when reviewing those decisions was that it specifically rejected the idea that the narrow stream of commerce theory has prevailed. Instead, the Russell court recognized the disagreement and the unsettled state of the law of specific subject matter jurisdiction and declined to specifically adopt that narrow stream of commerce theory. Did they adopt the broad one? No, I don't think that they specifically adopted either test in this case. So, quite frankly, I believe it may still be in somewhat of a state of flux as to whether or not this specific type of jurisdiction is going to be applicable. However, in reading the Russell ruling, I think that the specific language used by the justices was done so for the purpose of leaning toward, so to speak, the broad stream of commerce theory. The Russell case analyzed three specific underlying points in this topic. One, the United States Supreme Court unanimously endorsed the continued validity of worldwide Volkswagen and to establish specific jurisdiction. Two, specific jurisdiction when a defendant knows or reasonably should know that its products are being distributed and sold in the United States and specifically in Illinois. Jurisdiction is established. And three, under international shoe, the court must still focus on the notions of fair play and substantial justice. So those three underlying points, I think, were emphasized in Russell and recently interpreted in Colwell. Well, do you think in Russell they also came to the conclusion that when a manufacturer or producer knows or reasonably should know that products are distributed nationwide and might be sold in any of the 50 states, that a single sale is not sufficient to exercise specific jurisdiction? Agreed. But in this case, Your Honor, we do not have just a single sale. We have Gin Fey defendants absolutely admitting that they have sold and distributed and sent to the Port of Chicago. In this one shipment alone, over 260 cartons of wheels. And they acknowledge that that was not the only shipment from Ningbo, China, to the Port of Chicago distributed in Illinois. But that was over a course of, I believe, almost 10 years of shipment. So we're talking thousands of wheels had been distributed throughout the state of Illinois from the Gin Fey manufactured wheels. So we're not talking just about a single distribution of one or four wheels in this case. We're talking about a continuous relationship of a shipment of products from Ningbo, China, manufactured by Gin Fey into Illinois. And their testimony, even though it was disputed by the affidavit, their testimony in the invoices showed that they knew that those products were, in fact, being distributed and sold through the Port of Chicago, obviously Chicago being Illinois. We'll clarify that for me because I want to make sure that I have a complete understanding. Are you saying that those were specifically to be distributed in Chicago, Illinois, or were going through the port in Chicago bound for other states or other places outside Illinois? I think both, Your Honor. I think that they were both bound for places within Illinois as well as potentially outside of Illinois. But the ultimate receiver of those goods and wholesaler and retailer, as emphasized in the Russell case, Your Honor, where they state it doesn't matter, so to speak, that you're using third-party distributors where their products ultimately end up in Illinois. It's the fact that they are, in fact, coming into the state and being used in the state. And I think that the Russell court facts are strikingly similar to the facts of this case. Being the French manufacturer of these custom-made ball bearings, they did not know that their products were even being used or distributed or sold in Illinois. But they knowingly used an American distributor to sell and market its products throughout the United States, including in Illinois. But as pointed out by opposing counsel, there were several other factors and relationships and engagements involved in that case that we don't seem to have here. And I agree with Your Honor. But I think that if you look at page 10 of our reply brief, we analyzed the Russell court's opinion concerning an analysis of those additional factors. And Russell seemed to say we have met jurisdictional requirements under the broad stream of commerce theory. But it doesn't matter in the Russell case specifically because they said they also met the narrow stream of commerce test. And the facts cited by opposing counsel were the facts that they used to support the narrow stream of commerce. So the basis of the decision seemed to be the broad stream of commerce. But the Illinois Supreme Court said, but that didn't matter in that case  But I think that the basis of the Russell opinion, as I have argued, is more leaning towards, so to speak, even though not officially gaveling the adoption of the broad stream of commerce theory. They found the broad stream of commerce theory's factors, so to speak, as dispositive as to whether or not specific jurisdiction was going to be recognized in the Russell case. So in looking at the additional factors cited by opposing counsel, we just felt that they were irrelevant for our purposes because, one, they didn't exist here, but two, because it was simply additional factors that the Illinois Supreme Court found to justify its decision. But I think most importantly, Your Honors, in deciding this case is the meaning and rationale as to why we should establish and exercise jurisdiction over this nonresident foreign defendant. And the reason for that is this manufacturer is involved in the regular distribution of its products, albeit through third parties, into and being used by Illinois citizens, if those products are, in fact, manufactured and are defective. And they used to injure and harm Illinois citizens on Illinois roads. Illinois has a substantial interest in deciding whether or not we should hold those manufacturers to justice, quite frankly, Your Honors. So the final question that was posited by Russell in most jurisdictional cases, it's whether or not it's reasonable to have GINFE answer to any defective products that it knows are coming into Illinois. And I think in balancing all of the factors in this case, the interest in the state of Illinois, I think, is undeniable. The interest of the plaintiffs is undeniable. And I know one of the arguments of GINFE is, well, the plaintiffs will be covered, so to speak, because my client is, in the case, a distributor of the product. Direct Line is, in the case, a distributor of the product. But here we're looking at justice. So justice is to all the parties. It's not just to the plaintiffs. So the plaintiffs should not only be able to take if there is negligence from my client and the co-defendants, but also from the actual manufacturer and the designer of the product. So in looking at all of the factors and looking at all of the tests that have been performed, it's the strong interest of Illinois to protect its citizens in cases exactly like this. And while GINFE may be a foreign corporation, it has purchased insurance, it has retained counsel. The only factor that I think that they're attempting to argue is it would be a substantial burden for them to come argue and defend itself in Illinois. Times change. We are looking at an evolving technology. We are looking at different burdens that have evolved or actually lessened over time. We can take depositions by Skype. We can get documents by electronic means. We can essentially have all of these things take place with a much less burden than was held under international shoe or 100 years ago when maybe a Chinese manufacturer would possibly have a substantial burden to defend itself in the United States. That's no longer the case, and I think that that needs to be taken into consideration. They have insurance purchased in the United States specifically. You mentioned the insurance. I did. And, of course, opposing counsel saying that is just not something we should even consider. Why should we consider that? It should be considered, Your Honor, because it is a factor that GINFE knew it could be sued in the United States. Otherwise, they wouldn't have purchased insurance for the protection of claims in the United States and gives them access to counsel to defend them, which counsel has admirably done throughout the course of these proceedings. And it shows that it lessens their burden to defend itself in the state of Illinois and the United States because of that very factor. So for all of those reasons, we think the reasonableness factor weighs in our clients' and the plaintiff's favor. So for all of the reasons stated in our briefs and here today, we respectfully request this Autonomous Court reverse the trial court's order, dismissing the GINFE defendants from this case, and to remand the cause back for further proceedings. Thank you, counsel. You'll have additional time on rebuttal if you so desire. Mr. Pinder? Good morning, Justices. My name is Tom Pinder. I represent the two GINFE defendants. May it please the court, counsel, good morning. Nearly three years ago, I filed motions to dismiss these two Chinese corporations from this case based on lack of personal jurisdiction. In the brief time that I have with the panel this morning, in addition to answering any questions you have, I'd like to talk about a few key areas, including number one, who my clients are and where they are in this litigation vis-a-vis these appellants. Two, I'd like to address the 70-plus years of Supreme Court law, which has been consistent, but has been refined and more clearly defined over the years to determine what does and does not matter when analyzing personal jurisdiction. And three, I'd like to talk about how UPC and the plaintiffs have failed to meet their burden in this case. The burden is on the plaintiffs in this case. Having filed the motion, despite the fact that I filed the motion, my clients have no burden. The burden is on the plaintiff to establish jurisdiction, either through their pleadings or through evidence. They have to establish that there's a basis for them to sue my clients under the Illinois long-arm statute. If there is, we would then move to the federal due process analysis where the question is, depending on whether it's general or specific jurisdiction. In this case, it's specific. The plaintiffs have conceded general jurisdiction is not involved here. So for specific, the question would be whether or not there are minimum contacts and whether or not proceeding with the suit against my clients in McLean County would offend traditional notions of fair play and substantial justice. That latter analysis includes a discussion of five factors that have been laid out by the U.S. Supreme Court, the burdens that counsel just talked about and the interests of the party. The requirements of international sue, the minimum contacts and due process requirements, must be met as to each defendant. I have two defendants here, and I urge the court to consider that there are two defendants. The information as to those defendants on some points is very similar. They have the same address. They're both located in China. But there are differences. There are subtle differences that I urge the court to consider and to analyze both separately. As this court did in Justice Appleton, you wrote the opinion in Kahn v. Gramercy Advisors a couple of years ago in which you had to analyze, I think, five or six different defendants. Here it's a bit easier. There's only two. Unfortunately, and I think somewhat unfairly, UPC's appellate brief essentially links my two clients together as if there is no daylight between the two. And there is. In fact, a careful review shows that there are the differences between the two companies. The pleadings themselves say nothing. If we take the Shaw complaint, the Young complaint, and UPC's complaint, the pleadings themselves offer virtually nothing. The plaintiffs offer nothing on the domicile of my client. UPC admits that my client, Jinfei Holding, is in China. There's nothing shown, no nexus between my clients and the State of Illinois in the pleadings. And what I've just mentioned is something that I also want to raise. UPC, which is the lead appellant here, has only sued Jinfei Holding, the holding company. They did not sue Jinfei Wheel. The evidence on minimum contacts, I would suggest, is equally favorable to the Jinfei defendants. The affidavits show, and it's unrebutted, that they are located in China. They are Chinese corporations. Holding Company is merely a holding company. It owns Jinfei Wheel. Holding Company does not manufacture anything. Jinfei Holding doesn't ship, it doesn't sell, it doesn't market. It has no contracts with anyone in Illinois or any of the parties in this case. Jinfei Wheel, on the other hand, also located in China, is a manufacturer of wheels. But they sell those wheels in China. They enter into contracts in China, and when they sell those wheels, they deliver them as far as the port in China and no farther. Jinfei Wheel has no contracts with anyone in the state of Illinois. The only contract that Jinfei Wheel has is a contract with UPC. UPC is a California corporation, not domiciled here in Illinois. UPC's witnesses, Mr. Huang and Mr. Hsu, have both testified, and they confirmed that the locus of the relationship between UPC and Jinfei Wheel is in China. They, the UPC people, went to China to get that business. The contract between the two parties says that if there's a dispute between us, it will be resolved in the Chinese International Economic and Trade Association Arbitration Commission. That that arbitration will take place in Ningbo, China. It will take place in the language Chinese, and it will be according to PRC, People's Republic of China law. That's the agreement that these two parties entered into. And there's no question that the locus of that business relationship is in China. There's no evidence that that business relationship has any nexus to Illinois. So upon review of UPC's brief, the evidence, and the pleadings, we know that they did not sue Jinfei Wheel, yet they concentrate significant effort trying to establish a trace between the wheels that were involved in the accident in Bloomington to trace them back to Jinfei Wheel. For reasons that I've stated in my brief, I think they failed on that. But more importantly, I think that's the wrong question. The question is, they need to establish a relationship between these two Chinese companies and Illinois. That's the relationship that they have to trace back. The U.S. Supreme Court has said that the constitutional touchstone remains whether a defendant purposely established minimum contacts in the foreign state. And the relevant contacts are those, the U.S. Supreme Court says, that center on the relation among the defendant, the forum, and the litigation. There must be some action by which each of my clients purposely availed itself of the privilege of conducting business in Illinois, invoking the benefits and privilege of Illinois law. And mere foreseeability is not enough. Worldwide Volkswagen established that many years ago. In Worldwide Volkswagen, the court said, foreseeability alone is an insufficient benchmark for personal jurisdiction. If foreseeability alone were the criterion for personal jurisdiction, amenability to suit would travel with the chattel. In other words, wherever that wheel ended up, Jinfei could get sued there. And the Supreme Court rejected that proposition long ago and has continued to reject it since. The court said that such a rule would effectively abolish the limitations on the sovereignty of each state. Instead, the foreseeability that the court said you should look at is not whether or not it's foreseeable that the product would end up there. Rather, it should be whether the defendant's conduct and connection with the forum state, Illinois, are such that it should reasonably anticipate being hailed into court here. And whether or not financial benefits accrued to a defendant from a collateral relationship, in other words downstream commercial transactions, to the forum will not support jurisdiction if they do not stem from constitutionally cognizable contacts with the state of Illinois. For a stream of commerce analysis, the U.S. Supreme Court has said that there must be something more than foreseeability. Justice O'Connor talked about factors that would constitute something more in Asahi. More recently, Justice Breyer, in the concurring opinion in the Castro, said you've got to have a regular flow. You've got to have a regular flow of product to the state, a regular course of business dealings. You must have some special state-related design or activity or advertising. And none of those were present in the Castro, and none of them are present here for either of the two Chin-fei defendants. The plaintiffs, Shaw and Young, who haven't even filed a brief in the court and didn't file any briefs in the underlying court, have done nothing to meet that burden of establishing minimum contacts. UPC has tried, but respectfully, I state that they have failed. This Court's precedents, I think, are important. Justice Appleton, as I mentioned, you wrote the con, and you also wrote, I'm going to say it wrong, probably PLONS, P-L-O-N-S-E, back in 2007, Recent Minimum Contact Jurisdictional Analyses. As you found in PLONS, in this case, there is a total absence of affiliating circumstances between either Chin-fei defendant and the State of Illinois. Neither Chin-fei defendant has itself purposely availed itself of the benefits or protections of Illinois law. And as was the case in PLONS, the only financial benefit accruing to this defendant is from collateral relationship that others may have with the State of Illinois. And they do not stem from a relationship between Chin-fei and the State. You also talked in that case about the fact that it is not enough that an effect is caused in Illinois. In other words, the unilateral activities of others, other than the non-resident here Chinese defendants that are urging the Court not to impose its jurisdiction. If the unilateral acts of others are all that there is, that cannot satisfy the requirement of contacts between these defendants in the forum. The effects being felt in Illinois does not equate with minimum contacts. And the U.S. Supreme Court in Walden v. Fiore in 2014 reaffirmed that principle. The Court said the mere fact that the defendant's conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction. In this Court's decision in Kahn v. Gramercy, it was stated this way, An effect felt in Illinois without any contacts by the defendants with Illinois does not justify the exercise of personal jurisdiction in Illinois. And to so rule would violate the defendant's due process rights. Having failed to establish any minimum contacts that either Chin-fei defendant has with the State of Illinois, I believe that the analysis ends there. And I feel the same way about the failure to address the Illinois long-arm statute, which as I point out in my brief, I think in this instance should have been addressed initially as well and was not. But then again, if this Court feels that there is long-arm jurisdiction, and that there is evidence of minimum contacts, you then turn to the latter part of the due process analysis, which is the five factors. In UPC's brief, they give casual reference to the fact that there's no burden on my defendants and argue none of the other factors whatsoever. I would argue that there's been no presentation, possible presentation, that any of the five factors favor the appellants in this case. But to review, those factors are the burden on the defendant to litigate the case. Note that's number one. I would take the position that that burden is severe, and I believe that the Hague Evidence Convention, the State Department publications about litigation involving Chinese nationals, and just the facts of this case are such that a finding should be that the burden on my clients is severe. Not only would they be commanded to traverse the distance between their headquarters in China and the District Court of McLean County to litigate this case, but they would be submitting to this dispute to a foreign country's judicial system, which they do not understand, in a language which they do not understand. The unique burdens placed on one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. The Supreme Court said that in Asahi. They caution. This isn't a case where it's an Oklahoma company or it's an Indiana company. We're talking about crossing national borders here. In a language, in a legal system, that's completely different. And the court in Asahi has said, take careful consideration of that. Give it its due burden. In addition, before I was involved, before my clients were involved in this case, this case was originally pending in Cook County. There was a motion to transfer it to McLean County. The plaintiffs who are appealing this case took the position that it would be an undue burden on them to move the case from Cook to McLean. UPC and the others who were in the case at the time argued it was an undue burden for them to be in Cook County as opposed to McLean. Having taken those positions in the circuit court, I would suggest they have no basis to argue that there is a significant burden on my client when we're going all the way, bringing them all the way from China. The second factor to look at is whether or not the state of Illinois has an interest in adjudicating this case. Typically, in a tort case, I would suggest, and the cases bear this out, that the state of Illinois has an interest in safe products. I don't think this is that case, however. And it's for reasons, as I pointed out in my brief. If the plaintiffs, Shaw and Young, were concerned that these Chinese defendants should answer in the state of Illinois, they could have and should have opposed the motion in the circuit court by actually participating, initiating jurisdictional discovery, and briefing, and arguing the issue, which they didn't do. If they, and when the case came up on appeal, they elected not to file any briefs whatsoever. How can the state of Illinois claim it has a bigger interest in this case when the plaintiffs themselves have shown literally no interest in pursuing jurisdiction over my clients? That leaves the claim between UPC and my clients. That's a contribution claim. And it's between a California company and a Chinese company. Those two companies have entered into a contract, which calls for their disputes to be resolved in China in arbitration, not in the state of Illinois. So I would argue that the Illinois court should look at that, the agreement between the two parties. Why would Illinois have any interest to impose jurisdiction when the parties themselves have agreed not to submit to Illinois jurisdiction? I believe that, for the reasons stated, the plaintiffs have effective relief in this case. They have multiple parties. My client did not manufacture the lug bolt that supposedly broke. But they have multiple parties in this case that have submitted to jurisdiction, including UPC and the company that designed this wheel, Meridian Direct Line. On the efficient administration of justice, which is another factor, I don't believe that it's going to be more efficient to bring my client to Illinois to participate in litigation where everything is going to be translated, where discovery is going to be so cumbersome as to that Chinese entity. When that Chinese company has entered into an agreement with UPC for those disputes to be resolved in China in arbitration. In this case, as I mentioned in my briefs, it's been very difficult to conduct discovery. It took years for the plaintiffs to effect service on my Chinese clients under the Hague Evidence Convention. It's not an easy thing to do. And the Chinese government, I don't believe, makes it any easier. They are parties to the Hague Evidence Convention, but they've asserted exceptions to that treaty that make it clear that they are not interested in their nationals being exposed to U.S. discovery. It would be illegal for me to present witnesses for deposition in China, which is why we presented them for deposition in Hong Kong. But that took a considerable amount of effort to get those people the necessary visas they needed to get there. So on a balance of all of those factors, I believe they all come down in favor of the Jinfei defendants. There's been no presentation to the contrary from UPC. And when you consider the international context of these claims, the distances of the parties, the heavy burdens that are imposed on these nonresident defendants, what I view to be is the slight interests that the plaintiffs have shown in this case and the slight interests that this state has in this case in light of the contractual arraignments and the lack of interest by the plaintiffs in this litigation. We believe that the exercise of personal jurisdiction by an Illinois court over these two defendants, Holding and Wheel Company, in this instance would be unreasonable and unfair. Because the facts of this case do not establish minimum contact such that the exercise of personal jurisdiction is consistent with traditional notions of fair play and substantial justice, the appellee's request that the judgment of the Circuit Court of McLean County be affirmed as to both. Thank you. Thank you, counsel. Any further argument? Briefly in response, Your Honors. While the Jinfei defendants have asserted in their response briefing here in oral arguments today that Jinfei Holding is not a manufacturer of wheels, this actually contradicts their own motion to dismiss on a specific page of the record C-3324 where they admit that Jinfei Holding is in fact a manufacturer of wheels. The counsel for Jinfei's arguments surround the burdens that they claim they would have in defending this case in the state of Illinois. And also the fact that the plaintiffs, they believe, have not participated somehow in either the appeal or have not shown a quote-unquote interest. There's nothing like that in the record. The record is they filed lawsuits against Jinfei Holding and Jinfei Kida Wheel. The fact is that they prosecuted it, they conducted discovery on it, they conducted depositions on it, scheduled those depositions, participated in that underlying cause of action, as well as joined in our appellate brief. I don't know why they didn't do a separate brief of their own. Maybe they thought mine was adequate. So the level of participation I think is wholly irrelevant to anything concerning the burdens and the factors that are analyzed by courts in this circumstance. And I think an interesting point raised by counsel for Jinfei in his oral argument that China doesn't want its corporations to be held accountable here in the United States. Well, maybe it's time. Maybe it's time that products manufactured in China need, if they are defective and if they are profiting off U.S. citizens and the citizens of the state of Illinois, that they now need to be accountable if those products are in fact defective. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.